UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

                                    CASE NO. 1:08-CR-235

v.

                                    HON. ROBERT J. JONKER

LONELLE ANTONE MCKISSIC,

       Defendant.
_____/

## OPINION

Defendant Lonelle McKissic is charged with felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (Indictment, docket #1.) Defendant moves to suppress evidence of the firearm on the grounds that it was discovered as a result of an allegedly unlawful police search or seizure. (Motion to Suppress, docket 13.)

## BACKGROUND

The Court held an evidentiary hearing on Defendant's Motion to Suppress on January 12, 2009. (Docket #17.) City of Lansing Police Officer Luke Mardigian was the only witness to testify at the hearing. The Court finds Officer Mardigian's testimony credible in all respects.

**I.**    **The Traffic Stop**

Defendant McKissic was a passenger in a car pulled over by Lansing Police Officer Luke Mardigian at approximately 12:25 a.m. on March 30, 2008. (January 12, 2008 Evidentiary Hearing Transcript ("HTR") at 3-4, 18.) Officer Mardigian testified that he stopped the vehicle because he observed "the outline of some large object hanging from the rearview mirror." (HTR at 4.) Officer

Mardigian was two or three car-lengths behind the vehicle when he first noticed the object. (HTR at 21.) Mardigian could not determine what the object was, but he believed that it violated Michigan law because it obstructed the driver's view.[1] (HTR at 4, 20, 23-26.) Mardigian testified that the object was approximately six to seven inches long. (HTR at 22.) Mardigian later discovered that the object was a pine tree-shaped air freshener. (HTR at 21-23.)

## II.     The Arrest on an Outstanding Warrant

After stopping the vehicle, Mardigian informed the driver of the reason for the traffic stop and asked all of the car's occupants for identification. (HTR at 5.) Defendant McKissic stated that he did not have identification, but he provided a name verbally. (HTR at 5.) Officer Mardigian returned to his car and ran the occupants' names through the Law Enforcement Information Network ("LEIN") on his in-car computer. (HTR at 6.) The name provided by Defendant did not appear in the LEIN system. (HTR at 6.) At this point, Officer Mardigian believed that Defendant had provided a fake name. (HTR at 6.)

Mardigian returned to the car and again asked Defendant for his name. (HTR at 7.) Defendant restated and spelled the same name. (HTR at 7.) Mardigian again ran that name through the LEIN system, and again the system did not recognize the name. (HTR at 7.) Mardigian then asked Defendant to step out of the car. (HTR at 7.) Mardigian informed Defendant that he thought Defendant was lying about his name. (HTR at 8.) After some hesitation, Defendant admitted he had lied and provided his real name. (HTR at 8.) Mardigian ran that name through the LEIN system and discovered that Defendant had an outstanding warrant for failure to pay child support. (HTR at 8-9.)

---

[1] M.C.L. § 257.709(1)(c) states, "A person shall not drive a motor vehicle with any of the following . . . . A dangling ornament or other suspended object that obstructs the vision of the driver of the vehicle, except as authorized by law."

Mardigian then arrested Defendant and placed him in the back of the police car. (HTR at 9.) Mardigian testified that "no more than fifteen minutes" elapsed between the initial stop and Defendant's arrest. (HTR at 16.)

### III.     Discovery of the Firearm

After arresting Defendant, Officer Mardigian ordered the other occupants out of the vehicle and searched the passenger compartment. (HTR at 9.) Mardigian found no evidence or contraband in the passenger compartment, but he noticed the trunk of the car was accessible from the backseat. (HTR at 9.) Mardigian dropped the backseat and looked into the trunk. (HTR at 9.) Mardigian saw in the trunk a large black coat that he believed belonged to Defendant.[2] (HTR at 9.) Mardigian opened the trunk to retrieve the coat for Defendant. (HTR at 10.)

Mardigian testified that he retrieved the coat for Defendant because it was a cold night and he thought Defendant would want to wear the coat to jail. (HTR at 10.) When Mardigian picked up the coat, a silver handgun fell out into the trunk. (HTR at 10-11.) Mardigian testified that, at the time the gun fell out, he had not searched any part of the jacket. (HTR at 11.) After the gun fell out, Mardigian searched the coat, walked back to the police car, and asked Defendant if he would like to take his coat to jail. (HTR at 13-14.) Defendant replied, "Yes, if I could." (HTR at 14.)

## ANALYSIS

Defendant claims Officer Mardigian (1) lacked probable cause to stop the vehicle; (2) unreasonably detained him while running his name through the LEIN system; and (3) unlawfully

---

[2] Officer Mardigian believed the jacket belonged to Defendant because the jacket was "very large," and Defendant was "considerably larger than the other occupants of the vehicle." (HTR at 10.)

3

searched or seized his coat. (*Id.*) Defendant moves to suppress evidence of the gun under the "fruit of the poisonous tree" doctrine. (Motion to Suppress, docket #13.)

**I.      Officer Mardigian had Probable Cause to Stop the Vehicle**

Even the most routine traffic stop is a "seizure" within the meaning of the Fourth Amendment. *Brendlin v. California*, 127 S. Ct. 2400, 2406 (2007). All occupants of the car have standing to challenge the constitutionality of a traffic stop. *Id.* at 2407; *U.S. v. Perez*, 440 F.3d 514, 519 (6th Cir. 2006). Police may lawfully stop a vehicle if they have an objectively reasonable suspicion that a traffic violation is occurring. *U.S. v. Simpson*, 520 F.3d 531, 541-42 (6th Cir. 2008). In responding to a motion to suppress, the Government need not prove that a traffic violation actually occurred. *See id.* at 542. Rather, the Government need only show that the officer's suspicion of a violation was objectively reasonable. *Id.* ("[T]he proper question is not whether Simpson was, in fact, violating [Tennessee law] . . . The question is whether [the officer] had an objectively reasonable suspicion that a violation . . . was occurring.")

Defendant argues that Officer Mardigian could not reasonably believe that the air freshener hanging from the vehicle's rearview mirror violated the Michigan law prohibiting vision obstructions. (*See* Motion to Suppress, docket #13, at 3-4; M.C.L. § 257.709.) This argument is without merit. Officer Mardigian testified in detail regarding the size and positioning of the air freshener. (*See* HTR at 20-27.) According to Mardigian, he observed from two or three car-lengths away an object that was "definitely big enough that it could have obstructed the view of the driver." (HTR at 20.) Mardigian approximated the size of the object to be six or seven inches, and the object was hanging from a one-inch string fastened to the rearview mirror. (HTR at 22-23.) Regardless of whether the air freshener was in fact obstructing the driver's view in violation of M.C.L.

§ 257.709(1)(c),[3] Mardigian's uncontroverted testimony regarding the size and placement of the air freshener shows his suspicion was objectively reasonable. *Cf. Simpson*, 520 F.3d at 542-43. Accordingly, Defendant's motion on this ground is denied.

## II.     Defendant was Not Unreasonably Detained

Defendant argues that the gun should be suppressed because the length and manner of his detention were unreasonable. (Motion to Suppress, docket #13, at 4-6.) This argument focuses on Officer Mardigian's decision to ask Defendant for identification and detain him while running his name through the LEIN system. (*See id.*)

A police officer does not violate the Fourth Amendment "merely by approaching an individual . . . and asking him whether he is willing to answer some questions." *U.S. v. Erwin*, 155 F.3d 818, 823 (6th Cir. 1998) (citing *Florida v. Royer*, 460 U.S. 491, 497 (1983)). In the context of traffic stops, "[q]uestions that hold potential for detecting crime, yet create little or no inconvenience, do not turn a reasonable detention into an unreasonable detention." *U.S. v. Burton*, 334 F.3d 514, 518 (6th Cir. 2003) (quoting *U.S. v. Childs*, 277 F.3d 947, 954 (7th Cir. 2002)). The Sixth Circuit does not appear to distinguish between questions addressed to the driver and questions addressed to passengers. *See U.S. v. Hill*, 195 F.3d 258, 268-69 (6th Cir. 1999) (explaining how inconsistent

---

[3] On December 19, 2008, the Sixth Circuit issued an opinion declaring M.C.L. § 257.709 unconstitutionally vague. *See U.S. v. Davis*, 07-1964, slip op. at 6-7. However, twelve days later, the court withdrew that opinion for unspecified reasons. *See* 2008 WL 5264413 (6th Cir. December 31, 2008). Under the Sixth Circuit's rationale in *Davis*, the outcome of Defendant McKissic's Motion to Suppress in this case is the same regardless of whether the Sixth Circuit ultimately declares M.C.L. § 257.709 unconstitutional because Officer Mardigian reasonably relied on that statute in good faith at the time of the stop. *See U.S. v. Davis*, 07-1964, slip op. at 7-8. Before the December 19 panel decision, a reasonable officer was not on notice of a potential constitutional defect in the statute. *Id.*

answers from the driver and passenger gave rise to the arresting officer's reasonable suspicion of criminal activity).

In this case, Officer Mardigian did not violate Defendant's Fourth Amendment rights by asking him for identification and detaining him while accessing the LEIN system. Officer Mardigian plainly has the power to detain the occupants of the car while running a records check on the driver, s*ee U.S. v. Little*, 178 F.3d 1297, *3 (6th Cir. 1999) (table opinion) (citing *U.S. v. Bradshaw*, 102 F.3d 204, 212 (6th Cir. 1996)), and there is no evidence that Mardigian's decision to run a records check on the three passengers significantly increased the length of the detention. In fact, Mardigian testified that "no more than fifteen" minutes passed between the initial traffic stop and Defendant's ultimate arrest. (HTR at 16.) Moreover, Mardigian spent at least part of that fifteen minutes trying to ascertain Defendant's real name. Under these circumstances, Defendant's detention was not unreasonable or "excessively intrusive." *See Little*, 178 F.3d at *4; *Cf. Hill*, 195 F.3d at 264 (stating that the officer's actions must be "reasonably related in scope to circumstances justifying the initial interference.")

### III.     Officer Mardigian's Discovery of the Gun was Not the Result of a Search or Seizure of Defendant's Coat

Defendant argues that the gun should be suppressed because Officer Mardigian discovered it as a result of an unlawful search or seizure. (Motion to Suppress, docket #13, at 7.) Normally a car passenger does not have standing to object to a search of the car's trunk. *See Rakas v. Illinois*, 439 U.S. 128, 148-49 (1978); *U.S. v. Torres-Ramos*, 536 F.3d 542, 549 (6th Cir. 2008). However, Defendant McKissic may have standing to object to a search of his coat, even where that coat was found in the trunk. *Cf. U.S. v. Davis*, 430 F.3d 345, 360 (6th Cir. 2005) (noting that a defendant has

a reasonable expectation of privacy in items seized from a vehicle if he has a "property or possessory interest" in those items); *see also U.S. v. Buchner*, 7 F.3d 1149, 1154 (5th Cir. 1993) ("The owner of a suitcase located in another's car may have a legitimate expectation of privacy with respect to the content's of his suitcase.") Accordingly, the relevant question here is whether Officer Mardigian discovered the gun as a result of an unlawful search or seizure of Defendant's coat.

The Government argues that Officer Mardigian found the gun prior to searching the jacket. Under the Government's theory of the case, suppression is unwarranted because Mardigian's discovery of the gun was not the result of a "search." Officer Mardigian's testimony supports the Government's argument. Mardigian testified, "I just picked up the collar of the jacket and lifted it up like you would normally pick up a jacket off the ground or off a couch, and the gun fell into the trunk." (HTR at 36.) Mardigian explained that the gun was wrapped up in the coat and that the gun fell out as the coat unraveled when he picked it up. (HTR at 11, 35-37.) Once he discovered the gun, Mardigian searched the jacket for other weapons or contraband. (HTR at 36-37.)

Mardigian's uncontroverted testimony shows there was no search of the coat. A search occurs when "an expectation of privacy that society is prepared to consider reasonable is infringed." *U.S. v. Elmore*, 304 F.3d 557, 560 (6th Cir. 2002) (quoting *U.S. v. Jacobsen*, 466 U.S. 109, 113 (1984)). Assuming *arguendo* that Defendant has a reasonable expectation of privacy in a coat he is not wearing, that expectation of privacy is not infringed when a police officer merely picks up the coat. *See Blake v. County of Livingston*, 257 Fed. Appx. 848, 854 (6th Cir. 2007) (holding that Defendant could not assert a claim for an unlawful search where police seized his computer but did not actually search that computer). Officer Mardigian testified that the gun fell out before he opened any of the coat's pockets or searched its interior. (HTR at 10-11, 36.) Absent any evidence that

7

Mardigian discovered the gun "as a result" of a search of the coat, Defendant cannot obtain suppression on this ground. *See U.S. v. Pearce*, 531 F.3d 374, 383, n.2 (6th Cir. 2008) (citing *Hudson v. Michigan*, 547 U.S. 586, 592 (2006)).

As an alternative to his unlawful search claim, Defendant argues that Officer Mardigian unlawfully seized his coat. (Motion to Suppress, docket #13, at 9.) A "seizure" of property occurs where "there is some meaningful interference with an individual's possessory interest in that property." *Elmore*, 304 F.3d at 560 (quoting *Jacobsen*, 466 U.S. at 113). According to Mardigian, he lifted the coat out of the trunk, the coat unraveled, and the gun fell out. (HTR at 11, 36-37.) Mardigian then searched the coat, walked back to the police car, and offered the coat to Defendant. (HTR at 36-39.) At no point did Mardigian's handling of the coat ever "threaten [Defendant's] individual distinct interest in retaining possession of his [] property." *See Thomas v. Cohen*, 304 F.3d 563, 570 (6th Cir. 2002). Additionally, because Defendant must show that the gun was discovered "as a result" of an unreasonable seizure, *see Pearce*, 531 F.3d at 383, the only aspect of Mardigian's conduct relevant to this motion is his decision to lift the coat out of the trunk. Any further handling of the coat by Officer Mardigian would have no bearing on his discovery of the gun. To the extent that Mardigian's picking up of the coat constitutes an interference with Defendant's possessory interest in the coat, that interference was not significant enough to constitute a seizure. *Cf. Elmore*, 304 F.3d at 560. Therefore, Defendant's motion on this ground must be denied.

## CONCLUSION

In conclusion, Defendant's Motion to Suppress (docket #13) is denied. Officer Mardigian had probable cause to stop the vehicle Defendant was riding in, and Defendant was not unreasonably detained during the course of that stop. Furthermore, Mardigian's discovery of the coat was not the

product of an unreasonable search or seizure. Because there were no constitutional violations in this case, the "fruit of the poisonous tree" doctrine is inapplicable.


Dated:   January 21, 2009              /s/ Robert J. Jonker
                                       ROBERT J. JONKER
                                       UNITED STATES DISTRICT JUDGE